UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**  'O'

| Case No. | CR-14-143-CAS | | Date | March 30, 2015 |
|---|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | | |
| Interpreter | N/A | | | |

| Catherine Jeang | Laura Elias | Eddie Jauregui<br>Jean-Claude Andre |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| JANICE MARLYENE AITKEN | X | X | | NADINE HETTLE, DFPD | X | X | |

**Proceedings:** MOTION TO DISMISS INDICTMENT (Dkt. No. 25, filed February 2, 2015)

## I. INTRODUCTION

Defendant Janice Marylene Aitken is charged with illegally reentering the United States after having been deported as a result of her previous conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2). On February 2, 2015, defendant filed a motion to dismiss the indictment on the ground that her previous conviction was not in fact an aggravated felony, and that her deportation order therefore violated her due process rights. Dkt. No. 25. The government filed an opposition on February 17, 2015, and defendant filed a reply on March 2, 2015. Dkt. Nos. 30, 32. On March 30, 2015, the Court held a hearing at which counsel for the parties appeared and argued. After considering the parties' arguments, the Court grants the motion to dismiss for the reasons that follow.

## II. BACKGROUND

The operative facts are not in dispute. Defendant was born in Canada, was admitted to the United States as a lawful immigrant, and later became a legal permanent resident. She has two daughters who are United States citizens. Mot. at 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**               'O'

In 1991, defendant was charged in California with murder and with personally using a firearm within the meaning of California Penal Code sections 12022.5 and 1192.7(c)(8).[1] Mot. Ex. A. On March 17, 1992, defendant pleaded guilty to the lesser included offense of voluntary manslaughter in violation of Penal Code section 192(a). She received a sentence of eleven years of imprisonment—six years for the manslaughter violation, and five years for a firearm-related enhancement pursuant to Penal Code section 12022.5. Mot. Ex. B.

On November 20, 1995, defendant was ordered to show cause why she should not be deported. This order alleged that defendant was convicted of voluntary manslaughter in violation of Penal Code section 192(a), and sentenced to confinement for a period of eleven years for that offense. Mot. Ex. C. In subsequent deportation proceedings before an Immigration Judge, defendants' attorney conceded that defendant had been convicted of voluntary manslaughter, and that she was "deportable as charged." Mot. Ex. D. at 23–24. Defendant's counsel nonetheless argued for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), on due process and equal protection grounds distinct from those raised in the instant motion. Mot. Ex. D. at 24–25, 33–35. On April 4, 1997, the Immigration Judge denied defendant's application for a waiver under section 212(c), and ordered her deported to Canada. Mot. Ex. E. Defendant unsuccessfully appealed to the Board of Immigration Appeals ("BIA"), and then to the Ninth Circuit, which dismissed her petition on March 28, 2000. Mot. Exs. F, G.

Defendants subsequently reentered the United States and, on January 31, 2014, defendant was arrested in her home. On March 7, 2014, defendant was indicted for illegally reentering the United States after being deported subsequent to a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2). Dkt. No. 1.

## III. ANALYSIS

Defendant was deported on the ground that she had committed a "crime of violence," as defined in 18 U.S.C. § 16, which rendered her deportable as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). See 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony"). The crime of violence underlying defendants' deportation was defendant's conviction for voluntary manslaughter in violation of Penal Code section 192(a).

When, as here, a defendant is prosecuted for illegal reentry pursuant to 8 U.S.C. § 1326, the underlying removal order serves as a predicate element of the offense, and is therefore

---

[1] All subsequent references to "Penal Code" refer to the California Penal Code.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**  'O'

subject to collateral attack under the due process clause. United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004). A three-part test governs whether a defendant may collaterally attack a prior deportation. 8 U.S.C. § 1326(d). Under this test, a defendant must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." Id.

Here, the disputed issue is whether defendant's prior removal order was fundamentally unfair. "An underlying removal order is fundamentally unfair if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004). "To prove prejudice, [defendant] need not show that he actually would have been granted relief; rather, he must show only that he had a 'plausible' basis for seeking relief from deportation." Pallares-Galan, 359 F.3d at 1103. Here, defendant argues that her deportation was fundamentally unfair because the conviction that served as the basis for her deportation was not a crime of violence, and was therefore not an aggravated felony.

To determine whether an offense is an aggravated felony, the Ninth Circuit employs the "categorical" and "modified categorical" approaches laid out in Taylor v. United States, 495 U.S. 575 (1990), and Shepard v. United States, 544 U.S. 13 (2005). See United States v. Garcia-Santana, 774 F.3d 528, 533 (9th Cir. 2014). The parties agree that only the categorical approach applies to this case.[2] Under this approach, a court "looks 'not to the facts of the particular prior case,' but instead to whether the 'state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013) (quoting Gonzalez v. Duenaz–Alvarez, 549 U.S. 183, 186 (2007)). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily involved . . . facts equating to the generic federal offense.' " Id. (internal quotation marks and brackets removed) (quoting Shepard v. United States, 544 U.S. 13, 24 (2005) (plurality opinion)). Accordingly, "an offense is an aggravated felony if 'the full range of conduct covered by the state criminal statute falls within

---

[2]Mot. at 7–8 (arguing that the modified categorical approach should not be employed); Opp'n at 2 n.1 ("[T]he government . . . agrees that . . . the 'modified categorical approach' may not be employed here."); see Latu v. Mukasey, 547 F.3d 1070, 1076 (9th Cir. 2008) ("[W]here, as here, the government has not asked us to apply the modified categorical approach, we 'consider only whether the categorical approach is satisfied.' " (quoting Mandujano–Real v. Mukasey, 526 F.3d 585, 589 (9th Cir.2008))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**  'O'

the meaning' of the relevant definition of an aggravated felony." Garcia-Santana, 774 F.3d at 534 (internal quotation marks and brackets omitted) (quoting Ngaeth v. Mukasey, 545 F.3d 796, 800 (9th Cir. 2008) (per curiam)).  In contrast, "if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an [aggravated felony], even if the defendant actually committed the offense in its generic form." Descamps v. United States, 133 S. Ct. 2276, 2283 (2013); see also Moncrieffe, 133 S. Ct. at 1678 ("Whether the noncitizen's actual conduct involved such facts 'is quite irrelevant.' " (citation omitted)).

18 U.S.C. § 16 defines "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  In Leocal v. Ashcroft, the Supreme Court interpreted the statute and held that both subsections of § 16 require a higher *mens rea* "than negligent or merely accidental conduct."  534 U.S. 1, 10–11 (2004).  The Supreme Court did not reach the question of whether an offense "that requires proof of the reckless use of force . . . qualifies as a crime of violence." Id. at 13 (emphasis in original).  Two years later, however, the Ninth Circuit answered that question in the negative, holding "that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another." Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc).  The court reasoned that "accidental" meant "not having occurred as a result of anyone's purposeful act," and that "purposeful" means "done with a specific purpose in mind." Id. at 1130 (internal quotation marks and brackets omitted).  Because "[r]eckless conduct . . . is not purposeful," the Ninth Circuit "expressly overruled [previous] cases holding that crimes of violence under 18 U.S.C. § 16 may include offenses committed through the reckless, or grossly negligent, use of force." Id. at 1132 (holding that Arizona domestic violence and assault statutes did not cover categorical crimes of violence).

The Ninth Circuit further elucidated the meaning of Leocal and Fernandez-Ruiz in Covarrubias Teposte v. Holder, 632 F.3d 1049 (9th Cir. 2010).  Summarizing the relevant case law, the court first explained:

> "The effect of our holdings is that in order to be a predicate offense under either 18 U.S.C. § 16 approach, the underlying offense must require proof of an intentional use of force or a substantial risk that force will be intentionally used during its commission." United States v. Gomez–Leon, 545 F.3d 777, 787 (9th Cir. 2008).  Thus our precedent seems squarely to place crimes motivated by intent on a pedestal, while pushing off other very dangerous

and violent conduct that, because not intentional, does not qualify as a "crime of violence."

Covarrubias Teposte, 632 F.3d at 1053. The court then turned to the defendant's prior conviction of "Shooting at Inhabited Dwelling or Vehicle" in violation of California Penal Code section 246. Id. at 1051. That statute proscribes "maliciously and willfully discharg[ing] a firearm at an inhabited dwelling house, occupied building," or similar structure, with "inhabited" defined to mean "currently being used for dwelling purposes, whether occupied or not." Id. at 1053–54 (quoting Cal. Penal Code § 246). The Ninth Circuit noted that California courts had "interpreted the provision to require at minimum a reckless state of mind" because a person can violate the statute by " 'shooting either directly at or in close proximity to an inhabited or occupied target under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it.' " Id. at 1054 (emphasis in original) (quoting People v. Overman, 126 Cal. App. 4th 1344, 1356 (2005)). Accordingly, under the categorical approach, the Ninth Circuit could "gather with certainty only that Covarrubias intentionally discharged a gun with reckless disregard as to whether the bullet would hit an inhabited vehicle or dwelling." Id. Although such conduct "creates a risk of injury to other people and damage to property," it "does not involve a substantial risk of using force with intent against persons or property." Id. Therefore, the court held that section 246 "is not categorically a crime of violence." Id. at 1055.

Turning to the statute at issue, Penal Code section 192(a) proscribes "the unlawful killing of a human being without malice" and "upon a sudden quarrel or heat of passion." The Ninth Circuit has concluded in an unpublished disposition that section 192(a) is not a crime of violence, stating: "under our recent cases, such as Covarrubias Teposte . . . which applied the 'intentional force' requirement established by Fernandez-Ruiz . . . we hold that California Penal Code § 192(a) is not categorically a crime of violence because it can be committed through a reckless use of force." Purohit v. Holder, 441 F. App'x 458, 460 (9th Cir. 2011). Although not binding, unpublished dispositions "have persuasive value and indicate how the Ninth Circuit applies binding authority." Nuh Nhuoc Loi v. Scribner, 671 F. Supp. 2d 1189, 1201 n.10 (S.D. Cal. 2009). As it has previously,[3] the Court agrees with the Purohit court that section 192(a) is not a crime of violence under the categorical approach.

---

[3]In United States v. Dominguez, No. CR 12-879 CAS, 2013 WL 2237786, at *3 (C.D. Cal. May 20, 2013), this Court found Purohit's "reasoning persuasive, and also conclude[d] that voluntary manslaughter pursuant to § 192(a) is not categorically a crime of violence." The Court subsequently denied a motion for reconsideration on that issue. United States v. Dominguez, No. CR 12-879 CAS, 2013 WL 4040125 (C.D. Cal. July 18, 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**  'O'

"[I]n determining the categorical reach of a state crime, [courts] consider not only the language of the state statute, but also the interpretation of that language in judicial opinions." Ortega-Mendez v. Gonzalez, 450 F.3d 1010, 1016 (9th Cir. 2006). The California Supreme Court has held that voluntary manslaughter is "homicide that is committed either with an intent to kill or with conscious disregard for life," but without "malice." People v. Bryant, 56 Cal. 4th 959, 968 (2013); see also People v. Lasko, 23 Cal. 4th 101, 104 (2000) (holding that a defendant commits voluntary manslaughter when he "act[s] with conscious disregard for life and knowing that the conduct endangers the life of another, unintentionally but unlawfully kills in a sudden quarrel or heat of passion." (emphasis in original)). The Lasko court—through reference to a previous decision of the Ninth Circuit—indicated that the statute can cover conduct with a reckless *mens rea*:

> That view [that voluntary manslaughter does not require intent to kill], which we adopt today, has also been embraced by the United States Court of Appeals for the Ninth Circuit. In discussing the federal voluntary manslaughter statute, whose language is identical to California's voluntary manslaughter statute, the court noted: "While most voluntary manslaughter cases involve intent to kill, it is possible that a defendant who killed unintentionally but recklessly with extreme disregard for human life may have acted in the heat of passion with adequate provocation. [Citations.] In such a case, the defendant would be guilty of voluntary manslaughter, not murder."

Lasko, 23 Cal. 4th at 111 (emphasis added) (quoting United States v. Paul, 37 F.3d 496, 499 n.1 (9th Cir. 1994)). Additionally, the California Court of Appeal has held that "attempted voluntary manslaughter cannot be premised on the theory [a] defendant acted with conscious disregard for life, because it would be based on the 'internally contradictory premise' that one can intend to commit a reckless killing." People v. Gutierrez, 112 Cal. App. 4th 704, 710 (2003) (emphasis added). Based on the foregoing, the Court concludes that California's voluntary manslaughter statute sweeps in reckless conduct, and therefore cannot be a categorical crime of violence.

The Court is not persuaded to the contrary by the government's arguments. First, the government contends that "intentional use of physical force," while admittedly "not an express element of the crime of voluntary manslaughter," is nonetheless "required to sustain a conviction under § 192(a)." Opp'n at 4. The prosecution reasons that although under the "conscious disregard for life" formulation "there may be no intent to kill, a defendant's conduct must still be intentional and deliberate, and because the requisite intentional act results in killing, it also presupposes the use of force." Id. at 5. The government further argues that

**CRIMINAL MINUTES - GENERAL**         'O'

because conduct embraced by voluntary manslaughter has "natural consequences . . . dangerous to life," any act covered by the statute "cannot be distinguished from an 'intentional use of physical force.' " Id. at 6 (citing Lasko, 23 Cal. 4th at 107). But "[e]very crime of recklessness necessarily requires a purposeful, volitional act that sets in motion the later outcome." United States v. Coronado, 603 F.3d 706, 712 (9th Cir. 2010) (quoting United States v. Woods, 576 F.3d 400, 411 (7th Cir. 2009) (en banc). And in Covarrubias Teposte, the Ninth Circuit made clear that a crime is not categorically one of violence merely because it involves intentional conduct and dangerous consequences. 632 F.3d at 1054. Rather, the conduct apparent from the face of the statute must "involve a substantial risk of using force <u>with intent</u> against persons or property." Id. (emphasis added).[4]

     Next, the government argues that even if voluntary manslaughter is not categorically a crime of violence under 18 U.S.C. § 16(a), it is one under § 16(b), which defines "crime of violence" to include any felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." But in Leocal, the Supreme Court held that "the words 'use' and 'physical force' in § 16(b) should be given an 'identical construction' to § 16(a), again 'requiring a higher *mens rea* than merely accidental or negligent conduct.' " Covarrubias Teposte, 632 F.3d at 1053 (quoting Leocal, 543 U.S. at 11). The Leocal Court also made clear that "§16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct" because "[t]he 'substantial risk' in § 16(b) relates to the use

---

    [4]The Court is unpersuaded by the government's distinction that Covarrubias Teposte involved the "mere possibility" that a person or property would be harmed, whereas in a voluntary manslaughter cause "there has been a death and, thus, it is certain that force was intentionally used." Opp'n at 6 n.4. This argument sidesteps the Ninth Circuit's focus on intent by emphasizing the result, which can depend on chance. See Covarrubias Teposte, 693 F.3d at 1051 ("[O]ur precedent seems squarely to place crimes <u>motivated by intent</u> on a pedestal, while pushing off other very dangerous and violent conduct that, because not intentional, does not qualify as a 'crime of violence.' " (emphasis added)). The Court agrees with defendant that "intent to use force" cannot be inferred "simply because a death resulted." Reply at 9; see Bejarano-Urrutia v. Gonzalez, 413 F.3d 444, 446 (4th Cir. 2005) (holding that Virginia's aggravated involuntary manslaughter statute is not a crime of violence because although it "intrinsically involves a substantial risk that the defendant's actions will cause physical harm, it does not intrinsically involve a substantial risk that force will be applied 'as a means to an end' "), cited in Covarrubias Teposte, 632 F.3d at 1055.

of force, not to the possible effect of a person's conduct." 543 U.S. at 10 n.7. Therefore, the Court rejects the prosecution's § 16(b) argument for the same reasons stated above.[5]

Finally, the government argues that Purohit ignored two published Ninth Circuit decisions holding that section 192(a) is a crime of violence. The Court disagrees. In the first cited case, Hernandez de Anderson v. Gonzalez, 497 F.3d 927 (9th Cir. 2007), impliedly overruled on other grounds as stated in Cardenas-Delgado v. Holder, 720 F.3d 1111, 1118 (9th Cir. 2013), the petitioner argued that she was entitled to cancellation of removal proceedings, and the Ninth Circuit stated in a single sentence that because her "attempted voluntary manslaughter conviction qualifies as an aggravated felony, she is not eligible for cancellation of removal." Id. at 937 (emphasis added). But it is a basic principle of criminal law that "[a]n attempt to commit a crime requires a specific intent to commit the crime," even if "the crime attempted does not require a specific intent." Gutierrez, 112 Cal. App. 4th at 710 (emphasis in original; internal quotation marks and brackets omitted); see 1 Wayne R. LaFave, Substantive Criminal Law § 5.2(e) (2d ed. 2003) ("[C]riminal attempts require proof of an intent to bring about the consequences set forth in the crime attempted, and this is so even though no such intent is required for the completed crime."). Thus, attempted voluntary manslaughter (unlike the substantive crime) cannot involve merely reckless conduct, and "cannot be premised on the theory defendant acted with conscious disregard for life." Gutierrez, 112 Cal. App. 4th at 710.[6]

The government also cites Vargas-Hernandez v. Gonzalez, 497 F.3d 919 (9th Cir. 2007) as binding on the issue of whether section 192(a) is a crime of violence. In that case, the

---

[5]The Covarrubias Teposte court, whose reasoning controls this case, found that the statute at issue in that case "is not categorically a crime of violence according to the definition in 18 U.S.C. § 16(b)." 632 F.3d at 1055.

[6]Additionally, it is not apparent that the Hernandez de Anderson petitioner raised the issue of whether her conviction was for a categorical crime of violence, and the court did not analyze that issue. Rather, the petitioner argued that (1) the BIA erred by holding she was ineligible for termination of removal proceedings "because she had not established prima facie eligibility for naturalization by obtaining an affirmative statement to that effect from the [Department of Homeland Security]"; and (2) that the BIA impermissibly retroactively applied the Illegal Immigration Reform and Responsibility Act of 1996 in determining that she was ineligible to apply for suspension of deportation. Hernandez de Anderson, 497 F.3d at 929–30, 932–44. Therefore, it is dubious at best to cite this case as "controlling precedent" for the proposition that voluntary manslaughter is categorically a crime of violence. See Legal Servs. Corp. v. Velasquez, 531 U.S. 533, 557 (2001) (cases are not binding precedent for issues not raised, argued, or analyzed).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL            'O'**

government began removal proceedings against Vargas alleging that he had been convicted as an adult in California of voluntary manslaughter, "an aggravated felony." Id. at 921.  Vargas applied for discretionary section 212(c) relief, which was denied, and he was ordered deported. Id.  On appeal to the Ninth Circuit, Vargas argued that because he was sixteen years old when he committed the offense that led to his voluntary manslaughter conviction, the conviction should be treated as a juvenile adjudication that could not be used as a conviction in removal proceedings.  The Ninth Circuit disagreed, reasoning that because Vargas was tried and convicted as an adult, and was never adjudged a juvenile delinquent, there was no basis for treating the conviction as a juvenile adjudication. Id. at 922–23.  After disposing of other arguments not relevant to this case, the court concluded:

> Vargas' prosecution and conviction in California as an adult precluded the [Immigration Judge] and the BIA from treating his conviction as a juvenile adjudication.  As a result, his 1991 voluntary manslaughter conviction made him removable as an aggravated felon for having committed a crime of violence, and this court does not have jurisdiction to review the order of removal.

Id. at 927.  Although it is true that the Ninth Circuit did not overturn the Immigration Judge's finding that Vargas's California voluntary manslaughter conviction was a crime of violence, there is no indication anywhere in the opinion that Vargas raised that argument.  Vargas-Hernandez does not discuss 8 U.S.C. § 16, the test for whether a statute is a "crime of violence" under the categorical (or any other) approach, or case law such as Leocal or Fernando-Ruiz. "Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed." Legal Servs. Corp. v. Velasquez, 531 U.S. 533, 557 (2001).[7]

---

[7] Moreover, Hernandez de Anderson and Vargas-Hernandez preceded both Covarrubias Teposte, which clarified Fernando-Ruiz's holding that statutes sweeping in reckless conduct are not categorically crimes of violence, and Descamps v. United States, 133 S. Ct. 2276 (2013), which corrected a Ninth Circuit decision on when the modified categorical approach can be employed.  Instructively, the government argued that the modified categorical approach could be applied in Dominguez, 2013 WL 2237786, at *3–5 (which predated Descamps), but has conceded in this case—which presents the same issue—that the modified categorical approach may not be employed.  Accordingly, when the two cases on which the government relies were litigated, the petitioners (and the Ninth Circuit) may have been under the impression that whether the convictions were for "crimes of violence" could be proven by looking past the face of the statute to "documents[] such as indictments and jury instructions." Descamps, 133 S. Ct. at 2281.  This provides an additional reason not to assume that these cases are binding authority

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**  'O'

For these reasons, the Court rejects the government's contentions that <u>Hernandez de Anderson</u> and <u>Vargas-Hernandez</u> control this case, or render <u>Purohit</u> without any persuasive weight on the ground that it ignored contrary circuit law.[8]

Because her deportation order was based solely on defendant's voluntary manslaughter conviction, defendant has established that her deportation order was fundamentally unfair. <u>See</u> <u>United States v. Camacho-Lopez</u>, 450 F.3d 928, 930 (9th Cir. 2006) (holding that an alien "clearly suffered prejudice" and his deportation order was fundamentally unfair where he was removed only for having committed an aggravated felony, where the prior conviction did not actually fit that definition). Moreover, because 8 U.S.C. § 1252(a)(2)(c) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in" 8 U.S.C. § 1227(a)(2)(A)(iii), which covers aggravated felonies, the improper classification of defendant's crime as one of violence denied her the opportunity for judicial review. Finally, defendant asserts (and the government does not contest) that she exhausted her administrative remedies by appealing the Immigration Judge's denial of relief to the BIA and then the Ninth Circuit. Therefore, defendant has established that she meets each step of the three-part test for collaterally attacking her prior deportation order, and is entitled to dismissal of the indictment.

---

on an issue that was not analyzed by either court.

[8]At oral argument, the government cited for the first time two additional cases (both unpublished decisions of the Ninth Circuit), both of which support the government's position because they found that section 192(a) was a crime of violence, but neither of which changes this Court's conclusion. <u>See</u> <u>United States v. Puga-Ochoa</u>, 323 F. App'x 595 (9th Cir. 2009); <u>Berishaj v. Gonzales</u>, 238 F. App'x 275 (9th Cir. 2007). As unpublished dispositions, of course, these cases are not binding. Moreover, the Court finds the more recently decided <u>Purohit</u> case to be more persuasive because, unlike <u>Puga-Ochoa</u> and <u>Berishaj</u>, it (1) was decided after <u>Covarrubias Teposte</u>, and (2) cites California case law interpreting section 192(a). Indeed, the <u>Purohit</u> court expressly stated that its holding was based on the Ninth Circuit's "<u>recent</u> cases, such as <u>Covarrubias Teposte</u> . . . which applied the 'intentional force' requirement established by <u>Fernandez–Ruiz</u>." <u>Purohit</u>, 441 F. App'x at 460 (emphasis added). This suggests that unpublished decisions that predated <u>Covarrubias Teposte</u> should be given less persuasive weight.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**                              **'O'**

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendant's motion to dismiss the indictment.

IT IS SO ORDERED.

|  |  |  | 00 | : | 15 |
|---|---|---|---|---|---|
|  |  | Initials of Deputy Clerk | | CMJ | |

cc: Pretrial Services